**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**UNITED STATES OF AMERICA,**

**vs.**

**Case No. 4:89cr4004-WS
Case No. 4:97cv109-WS/WCS**

**STEVEN DEAN,**

   **Defendant.**

_____/

## REPORT AND RECOMMENDATION ON § 2255 REMAND

This cause was remanded from the Eleventh Circuit a second time,[1] on the

Government's Confession of Error, as this court failed to appoint counsel for Defendant

for the purpose of filing a written closing argument after an evidentiary hearing on his §

2255 claims.  Doc. 832.[2]

_____

   [1] The initial remand was on grounds one, five, and six of the § 2255 motion as amended.  Doc. 715 (rejecting this court's conclusion that that amendment did not relate back to the timely § 2255 motion); Dean v. United States, 278 F.3d 1218 (11th Cir. 2002) (published opinion).

   [2] Counsel was appointed and a hearing was held on July 23, 2003.  Counsel did not file a closing argument within the time set by the court, and it was ultimately determined that counsel had passed away.  See Doc. 799, pp. 1-3 (supplemental report and recommendation, setting forth this history and concluding that "additional argument (counseled or pro se) would not be of any benefit to Defendant on this record.").

The case was then referred to the undersigned for further proceedings.  Doc. 833

(vacating the court's order and judgment, docs. 804 and 805).  Counsel was appointed,

and Defendant's closing argument has been filed.  Doc. 836.

As in the supplemental report and recommendation, this report and

recommendation adopts and incorporates by reference the report and recommendation

entered on the docket on November 6, 2002.  Doc. 744.  It is recommended that it be

adopted as supplemented and clarified by the following, to replace the discussion as to

ground one, under the subheading Joseph Smith (doc. 744, pp. 3-7).[3]  This discussion

is similar to the discussion set forth in the supplemental report and recommendation

(doc. 799, pp. 4-12), but considers the closing argument recently filed through counsel.

**Joseph Smith**

Joseph Smith testified at trial that he had entered into a plea agreement with the

Government in this case.  Doc. 381, T381C, pp. 57-58.[4]  He said that Jesse Wooden

was a big drug dealer in Miami but it got "too hot" there.  Smith first came to

---

[3] In ground one, Defendant claimed that witnesses Joseph Smith, Michael Cordova, and Taimmi Holliday committed perjury, and that counsel Eric Haugdahl was ineffective for failing to impeach the testimony or object to the Government's misconduct in introducing the testimony.  Doc. 744, pp. 2-3; § 2255 memo (attached to doc. 577), pp. 1-11.  Only the testimony of Smith was implicated in the objections to the recommendation or at the hearing.  The court previously indicated that other grounds might be affected by evidence presented at the hearing, but they were not.  Smith's testimony was also relevant to ground six, which the undersigned rejected as Defendant had not shown that his testimony was so incredible or unreliable as to be inadmissible. Doc. 744, p. 15.  This conclusion is not changed by the additional evidence, which supports the conclusion that the evidence was not incredible or unreliable.

[4] The volumes of the trial transcript are all marked as doc. 381 in the file, but given different numbers for different appeals.  The court will use the RMS number associated with the bar code on the upper right corner of the volume.  This volume is T381C (that is, volume C of transcript, doc. 381).

Tallahassee with Wooden in December of 1987, to sell drugs and work for him. *Id.*, pp. 58-59. He worked for him about a year and a half. *Id.*, p. 60.

Smith said the morning after his first night in Tallahassee, he saw Wooden, Burke, and someone named Bernard cook cocaine into crack and put it in thousand dollar baggies. *Id.*, p. 61. They cooked four square dishes full, each containing $15,000 to $16,000 worth of crack, and cooked around 16 round dishes, each containing about $2,000 worth of crack. *Id.*, p. 62. He said Wooden and Burke would get money and then go buy more cocaine. He sais he saw them cooking it lots of times. *Id.*, pp. 63-64. Smith said Wooden had 14 or 15 people working for him, each selling two or three bombs (having twenty $50 rocks in it) a day. *Id.*, p. 65. They would return $800 and keep $200. *Id.* Smith wanted to leave the organization but was threatened with harm to him or his family if he did. *Id.*, pp. 67-68.

Smith said he knew that the Defendant Steven Dean, or Stevie D, he worked for Wooden. *Id.*, p. 76. He first saw him selling drugs when he first came to Tallahassee, in December of 1987. *Id.* Smith said Defendant and Charles Hudson dressed up in army camouflage, and went out and robbed people to get money for cocaine. *Id.*, pp. 76-77.

Smith said that Shine was a rival drug dealer from Miami, who set up business in Wooden's territory. *Id.*, p. 77-78. Smith, Wooden, Defendant and others – Hudson, Shorty (Darren Hudson), Clay Capers, and Bernard – went out to rob Shine. *Id.*, p. 81. Wooden was mad and gave them all guns, then they walked to Shine's residence. *Id.* Defendant, Hudson, and Shorty went in Shine's house or apartment, and came out with a box of money. *Id.* They all went back to the white house (out of which Wooden

operated), and Wooden gave them all money and told them to spend the night there.
*Id.*, pp. 81-82.

The next morning, Smith and Clay Capers left and Shine shot Capers and said
Jesse Wooden was next.  *Id.*, p. 82.  Smith went back to the white house and told them,
and they all got into the Cadillac rental car and went out to find Shine.  *Id.*, p. 82.
Hudson, Defendant, and Wooden all had guns.  *Id.*, pp. 81-82.  They were looking for
Shine to kill him, but did not find him.  *Id.*, p. 82.  Wooden thought Shine had returned to
Miami, so Smith, Defendant Dean, Hudson, Burke, and others went to Shine's house in
Miami to find him.  *Id.*, pp. 83-84.  This trip to Miami, to find Shine, was in June or July
of 1988.  *Id.*, pp. 72-73, 83-84, 110-111.  Wooden found out that John referred Shine to
Tallahassee to sell cocaine, and so Defendant, Hudson, Burke and Bernard beat up
John and Wooden shot him in the leg.  *Id.*, pp. 84-85.  The jury was instructed to
consider this evidence only as to those identified by Smith as being there.  *Id.*, pp. 93-
94.

Smith testified that he and Wooden came back to Tallahassee after that, around
August of 1988, and Defendant came back the next day or so.  *Id.*, pp. 85-87, 110-111.
Smith said Defendant was working for Burke after he came back, in August or
September of 1988, and later worked for Wooden again.  *Id.*, p. 87, 111.

Defendant's involvement in the trip to Miami was also supported by the testimony
of Patrick Baggett.  He testified that Defendant told him about the robbery of Shine and
the shooting of Capers.  T381B, pp. 155-156.  His testimony was limited to what
Defendant told him.  *Id.*, pp. 154, 157.  Baggett said Defendant told him that he went to
Miami with Jesse Wooden, L. B. Allen, and Joe Smith.  *Id.*, p. 157.  On cross
examination, counsel asked when Defendant had made the statements to Baggett, and

Baggett said "I didn't talk to Stevie D in July of '88, he was already locked up."  T381C, p. 14.  Baggett was arrested in October or November of 1988, and said that he and Defendant were in the same cell at Walton County Jail for about five days, and were always together in the basketball yard.  T381B, p. 169; T381C, p. 14.

In his amended § 2255 motion, Defendant argued that discrepancies in the testimony constituted a "prima facie showing" of the knowing use of false testimony, and counsel should have objected.  Doc. 577. p. 5.  He argued that Smith's testimony was "an obvious fabrication," given that Defendant was in custody since June 15, 1988, and "defense counsel never attempted to correct the false testimony of Smith . . . ."  Doc. 577, attachment, pp. 2-3 (citing the PSR at pp. 5-6).   He argued that defense counsel was ineffective for failing to impeach the testimony, and for failing to object to Government misconduct in introducing it.

In the previous report and recommendation, the undersigned found no evidence to show that Defendant was actually in custody for this period, as he could have been released on bond after his July 14, 1988, arrest.  Doc. 744, pp. 6-7.  Defendant presented evidence by objection that he was *not* released on bond after his arrest on July 14, 1988.  Doc. 747, attachments.  Defendant argued that "although counsel presented an alibi defense, counsel's performance was deficient because counsel failed to investigate the alibi and acquire the necessary proof required to impeach Joseph Smith (CI Smith)."  Doc. 747, p. 2.  Defendant read the report and recommendation to imply that, if he *could* demonstrate he was actually in custody, "the ineffective assistance of counsel's claim [sic] for failure to investigate would be apparent on its face."  *Id.*  He argued:

> [Smith's] false testimony supplied the needed ingredient in order to persuade the jury to believe beyond a reasonable doubt that the movant accompanied him (CI) to Miami, returned to Florida days later, and was part of the conspiracy as outlined by the CI (Smith).

*Id.*, p. 5.  Defendant asserts that the Government knew or should have known he was in custody from July 14, 1988, and so knew that Smith's testimony was false or at least highly misleading.  *Id.*, pp. 5-6.

But proof that Defendant was in custody from the time of his arrest on July 14, 1988, does not establish that Smith's testimony was false, that the Government knew it was false, or that counsel was ineffective.  Prior to trial, defense counsel Haugdahl filed a notice of alibi, asserting that Defendant was incarcerated from July of 1988 until March of 1989.  Doc. 99.  Mr. Haugdahl testified at the § 2255 hearing that his office verified the dates of Defendant's custody, and tried to convince the Government to enter a stipulation as he did not want to call Defendant to the stand.  Doc. 790, p. 32.  He said he argued in closing that Defendant could not have been involved in the Miami incidents because he was in jail at the time.  *Id.*, p. 33.

Stephen Dobson, the Assistant United States Attorney who prosecuted the case at trial, testified that Haugdahl "made a real issue about it, and was "pretty vigorous in talking about that and we finally entered into the stipulation later in the trial."  *Id.*, pp. 12-13.  Dobson said he was "used to witnesses being off on their dates and it wasn't unusual for me when somebody would say August that they would mean June . . . .  I tried a case in Gainesville where two of my witnesses testified that some cocaine was dropped on two different days and I know it couldn't have been."  *Id.*, p. 13.  He thought it was an issue for the jury, but recalled that he and Haugdahl "reached an agreement that we wanted the jury to be sure they knew that Mr. Dean was incarcerated in July

from that point forward and therefore we entered into the stipulation which was read to

the jury."  *Id.*

Dobson said he understood Smith's statement, that they returned from Miami

"somewhere" around August or September of 1988, to be an estimate, that Smith was

not sure.  *Id.*, p. 22.  He repeated that it was not unusual for people to get the dates

wrong.  *Id.*, p. 24.  He explained:

> In the context of a conspiracy that goes on for several years, I think
> witnesses can get mixed up on dates.  I'm not sure if I could tell you what I
> was doing two weeks ago at this time today.

*Id.*, pp. 27-28.

Dobson read the stipulation from the transcript of June 28, 1989, submitted as

Government Exhibit 1 at the § 2255 hearing.  Doc. 790, p. 15 and Ex. 1.  The stipulation

appears in the record at T381F, p. 155.  Published to the jury after the Government

rested and before Defendant presented his defense witness,[5] the stipulation provided:

> Since July 14, 1988 the Defendant, Steve Dean, has been continually in
> custody pending this trial and for a state court conviction for the
> possession of a [sic] thirty-nine packets of powder cocaine.  During this
> period of custody, the Defendant Steve Dean, still has had the ability to
> communicate through visitors, mail or telephone calls.

*Id.*, pp. 155-156; doc. 790, pp. 15-16.

Haugdahl testified at the § 2255 hearing that when he cross examined Smith he

specifically did *not* bring up the fact that it would have been impossible for Defendant to

have committed the acts on the dates Smith testified to.  Doc. 790, p. 34.

---

[5] The Government rested.  *Id.*, at 127.  Defendants made motions for judgment of acquittal and mistrial, which were denied.  *Id.*, pp. 127-140.  Defendant Hudson called Agent Michael Smith (*Id.*, p. 144-156), then counsel for Dean read the stipulation and presented his witness, Catherine Dean.  *Id.*, pp. 155-164.  The Defendants and the Government rested.  *Id.*, p. 165.

> I figured, like Mr. Dobson alluded to, the dates can kind of be fuzzy and I
> was afraid that he'd say, Oh, it was actually in May or June or it was
> something we did the prior year, I was mistaken.  And he'd be able to
> explain it away.  I thought it would be more effective to do the stipulation at
> the end of the Government's case or I guess maybe it was the beginning
> of my case and then be able to also then highlight it when the jury was
> going to go into the deliberation by pointing that stipulation out and
> arguing it in my closing.
>
> And I reviewed my closing notes, which I still have. . . .  And I specifically
> had that as part of my closing.

*Id.*, pp. 34-35.

The parties at the § 2255 hearing stipulated that while the Government's closing

arguments at trial were transcribed, Defendant's closing arguments were not.  *Id.*, p. 35.

Haugdahl still had notes that he used during closing argument.  He noted the stipulation

in the margin next to his notes on Smith, and said that he thought it was significant that

they could cast some doubt on whether that witness was telling the truth.  *Id.*, pp. 36-37.

The notes were admitted as Government Ex. 5 at the § 2255 hearing.  *Id.*, p. 37.[6]  In his

notes regarding Joe Smith, counsel wrote that "Steve worked for C. W. around end of

August and in September of 1988," and in the margin noted the stipulation, to which the

Government agreed, that Defendant was in jail since July 14, 1988.  Ex. 5, pp. 2 and 3

(copy of top and bottom of same page).  An asterisk, apparently for emphasis, appears

next to the note about the stipulation.

Defendant, through counsel, argues in response to Haugdahl's testimony that his

strategy "was to remain quiet on the important issue that Mr. Dean could not have

---

[6] The exhibits are attached to the minutes of the § 2255 hearing (doc. 787) as
well as the transcript (doc. 790).  As Defendant will be provided with a copy of the
transcript and attached exhibits, the court refers to that document.

participated in those events in question because he was in jail," and that he never

produced testimony from the County Sheriff or Department of Corrections to establish

the period of incarceration; "[n]ot a very convincing defense."  Doc. 836, pp. 3-4.  It is

argued that if counsel had prevailed in challenging Smith's testimony, it would have

been a "markedly weaker case for the prosecution" because he was one of the

Government's best witnesses.  *Id.*, p. 4.  Defendant admits, however, that if counsel had

not successfully impeached Smith, the results would not have been different, but argues

that there would have been no harm in trying.  *Id.*  Defendant points to Haugdahl's

testimony showing he had no real memory of what he argued in closing argument, and

to Mr. Dobson's testimony that if Smith testified that Defendant did something in August

after Smith returned from Miami, it would be false.  *Id.*, p. 6.  It is argued that "[t]he

testimony was false, the government, Mr. Dobson, knew the testimony to be false, it

was material and it most certainly affected the judgement of the trier of fact."  *Id.*, p. 7.

> As to Defendant's claim that the Government presented perjured testimony,

> To obtain a reversal on the grounds that the government relied on
> perjured testimony, the following must be shown: (1) the contested
> statements were actually false, (2) the statements were material, and (3)
> the prosecution knew that they were false.

United States v. Bailey, 123 F.3d 1381, 1395 (11th Cir. 1997) (citation omitted).  A

memory lapse, unintentional error, or oversight is not perjury.  *Id.*, at 1395-96, citing

United States v. Payne, 940 F.2d 286, 291 (8th Cir.1991) (recognizing "that it is not

enough that the testimony is challenged by another witness or is inconsistent with prior

statements, and not every contradiction in fact or argument is material," citation

omitted).

It has not been shown here that Smith's testimony was false or even particularly misleading.  Smith was there and had personal knowledge of the Shine robbery, the trip to Miami, and the attack on a person named John.  He said that the trip to Miami occurred in June or July, and that they came back a few days later, which he guessed to be August.  If the trip had started in June or early in July, they could have gone to Miami and returned before Defendant's arrest on July 14, 1988.  It is not necessarily perjury for the witness to recall the wrong date or time period.  This is supported by the testimony of Dobson and Haugdahl, as well as common sense.

Defendant has not established ineffectiveness of counsel with regard to Smith's testimony.  "A convicted defendant making a claim of ineffective assistance of counsel must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."  Strickland v. Washington, 466 U.S. 668, 690, 104 S.Ct. 2052, 2066, 80 L.Ed.2d 674 (1984).  In reviewing the identified acts, "every effort must be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time," and "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  466 U.S. at 689, 690, 104 S.Ct. at 2065, 2066.

Even if error is demonstrated, Defendant must also show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  466 U.S. at 694, 104 S.Ct. at 2068.

Contrary to Defendant's allegation, counsel did not allow Smith's testimony to go unimpeached or unchallenged.  It is not unusual for witnesses, particularly co-conspirators in a drug case, to be unclear on specific dates.  Counsel confirmed the period of Defendant's custody and convinced the Government to stipulate to it.  He did not need to call jail witnesses to establish the fact.  He then made a strategic decision to not use this information in cross examination of Smith.  If counsel had tried to pin Smith down on cross examination, Smith would have had the opportunity to explain that it must have been earlier, to make the dates consistent, or to offer potentially more damaging information to explain how he knew that Defendant was in Miami and returned Tallahassee.  Counsel made a strategic decision to not provide Smith with this opportunity, and to instead offer the stipulation *after* Smith's testimony and then argue it in closing.  This was a good tactical decision.

Further, Defendant has not demonstrated that if counsel had presented additional evidence of the alibi (in addition to the stipulation), or used it in cross examination of Smith, that the result would have been any different.  It is not likely, as noted above, that Smith's testimony would have been substantially different if he had been confronted with specific dates.  Further, his testimony was consistent with Baggett's testimony as to what Defendant told him when they were in custody together in October or November of 1988, that he (Defendant) was with the other co-conspirators in Miami as Smith had testified.  Defendant is not entitled to any relief on this aspect of ground one.

It is, therefore, respectfully **RECOMMENDED** that Defendant's motion for appointment of counsel (doc. 798) be **DENIED**; that the previous report and

recommendation (doc. 744), as corrected and clarified in this recommendation, be

**ADOPTED**; and that the § 2255 motion as amended (docs. 556 and 577) be **DENIED**

**WITH PREJUDICE**.

        **IN CHAMBERS** at Tallahassee, Florida, on April 5, 2005.


                **s/    William C. Sherrill, Jr.**
                **WILLIAM C. SHERRILL, JR.**
                **UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

        **A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**